Elmer J. Pickett and Lois N. Pickett v. Commissioner.
Pickett v. Commissioner
Docket No. 2738-63.
United States Tax Court
T.C. Memo 1965-196; 1965 Tax Ct. Memo LEXIS 133; 24 T.C.M. (CCH) 1002; T.C.M. (RIA) 65196; July 20, 1965
*133 Julie M. Reardon and Gene W. Reardon, 2150 First National Bank Bldg., Denver, Colo., for the petitioners. Fredrick B. Strothman, for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $2,026.33 in the income tax of the petitioners for 1960. The only issue for decision is whether $15,000 received by Elmer in 1960 upon the termination of his partnership with another optometrist was long-term capital gain, as reported, or ordinary income from an agreement not to compete, as determined by the Commissioner. Findings of Fact The petitioners, husband and wife, filed a joint income tax return for 1960 with the director of internal revenue for the district of Denver, Colorado. Elmer is an optometrist. He and Albert A. Sutton, an optometrist, began practicing optometry as partners in Pueblo, Colorado, on January 1, 1955. Each had been licensed to practice optometry in 1950. Sutton had practiced in Pueblo and Elmer had practiced in Gunnison prior to 1955. They executed a detailed written partnership agreement on July 1, 1955, to practice optometry in Colorado with their office in Pueblo. Each was to devote his *134 full time to the partnership business. The profits were to be shared as follows: Sutton
Pickett
Percent of
Percent of
Year
Preferred
balance
Preferred
balance
1955
$6,600
95
$4,200
5
1956
7,200
90
5,400
10
1957
7,800
85
6,600
15
1958
8,400
80
7,800
20
1959
9,000
9,000 The "balance" was to be shared as in 1958 thereafter unless Pickett bought an additional interest in the business. Article X, 10.2 of the agreement provided that if either partner should desire to terminate the partnership prior to January 1, 1960, Sutton could elect to purchase Pickett's share of the business, paying to Pickett his shares of the capital accounts and of the accumulated profits plus a stated amount, increasing to $15,000 in 1959, representing the value of Pickett's interest in the business. Article X, 10.3 provided for dissolution after January 1, 1960. It first provided that until such time as Pickett had elected to purchase the additional 30% as provided in Article VII, 8.3 he would have only such rights as were provided in Article X, 10.2. It also provided that if purchase had been made by Pickett, Sutton had "first right *135 to purchase the business of the partnership" under terms which are not material since Pickett did not purchase any additional interest in the business. Article XI was as follows: In the event that this agreement shall be terminated for any reason except on account of the death of Dr. Albert A. Sutton or his retirement from the practice of optometry in the County of Pueblo, State of Colorado, Dr. E. J. Pickett hereby agrees not to practice or engage, either directly or indirectly, in the practice of optometry in Pueblo County, Colorado, for a period of five years after the termination or cancellation of this agreement unless the written consent is first secured from Dr. Albert A. Sutton. Provided however, should Dr. Pickett purchase the business of the partnership upon liquidation as provided in Article X, he shall be permitted to practice within the County of Pueblo. Sutton and Pickett also entered into a "Trust Agreement" on July 1, 1955. It recited that the partners desired to provide for the surviving partner to pay the representatives of the deceased partner the value of the deceased's partnership interest at the date of his death. Laurence A. Ardell was named Trustee. *136 Article 1 was as follows: The partners herewith and by this indenture do, deliver to the trustee the several policies of insurance on the lives of the partners. Each of the policies has been taken out by one partner on the life of the other partner, party to this indenture. The trustee has been named as the beneficiary of each of the policies. Each partner was to pay the premiums on the policy taken out by him. Article 5 provided that the value of the partnership interests to be paid by the survivor "shall be the price fixed by the partners at the date hereof, or at the last valuation date hereafter." The valuations fixed at July 1, 1955, were $75,000 for Sutton's interest and "None" for Pickett's. The valuations later fixed as of December 31, 1959, the last valuation date, were $60,000 for Sutton's interest and $15,000 for Pickett's interest. The number of customers and the gross receipts of the business about doubled from the first to the last year of the existence of the partnership. Pickett was seeing more customers of the firm than Sutton during the first six months of 1960. The firm maintained a record relating to each customer and many made more than one visit. *137 Pickett wanted to continue as a partner. He tried to acquire an additional interest in the firm early in 1960 but Sutton refused to sell. Pickett then became alarmed lest Sutton was intending to buy his interest as permitted by the partnership agreement. He consulted a Pueblo attorney at law as to whether he could force Sutton to sell him an additional 30 percent interest in the business. Kettlekamp, the attorney, advised against any legal action, on the theory that it would probably hurt the business for both partners, and urged Pickett to continue as a partner until Sutton made his intentions clear. Sutton on or about June 1, 1960, advised Pickett that he intended to dissolve the partnership, by buying Pickett's interest. He later said he would insist that Pickett cease practicing in Pueblo, in accordance with their partnership agreement. Kettlekamp advised Pickett that Sutton had the right under their partnership agreement to buy Pickett's interest and to prevent him from practicing in Pueblo. Pickett was convinced by this advice. Pickett, Kettlekamp, Sutton and Laurence A. Ardell, Sutton's attorney, met in Ardell's office. Sutton said he was relying upon the July 1, 1955, partnership *138 agreement and would not deviate from it. The attorneys then discussed and came to an agreement as to Pickett's capital account and the collection and payment of firm earnings due but not divided between the partners. There was no discussion at the meeting as to the value of Pickett's interest in the partnership business and no discussion as to any payment to be made for any agreement by Pickett not to practice optometry in Pueblo County. Sutton and Pickett both understood, during the above described meeting, that Sutton was to pay Pickett for his interest in the partnership business the $15,000 which they had previously agreed was its current value, and they also understood that the partnership would be terminated and under their July 1, 1955, partnership agreement Pickett would thereafter be prevented from practicing optometry in Pueblo County. Sutton paid Pickett $10,000 of the $15,000 due Pickett for his partnership interest shortly after the final conference and Pickett began to make arrangements to move to Denver and to practice optometry there. Later Ardell prepared and submitted to the partners the documents which they immediately signed on October 3, 1960. The October 3, 1960 document *139 recites, inter alia, that "Dr. Albert A. Sutton is desirous of purchasing the interest of Dr. E. J. Pickett in said partnership." It also states the agreement as to payment of Pickett's capital account and his share of the accounts receivable which "Sutton is not purchasing" but would collect and pay to Pickett. Then, contrary to its own statement and the agreement, understanding, and acts of Sutton and Pickett, is a provision that Sutton is to pay Pickett "$15,000 in consideration of Dr. E. J. Pickett agreeing not to practice or engage either directly or indirectly in the practice of optometry in Pueblo County, Colorado, for a period of five years from the first day of June 1960." Both Sutton and Pickett signed that document but its statement that the $15,000 was paid for Pickett's agreement not to practice in Pueblo County is an incorrect statement of their agreement. The partnership agreement of July 1, 1955, prevented Pickett from competing in Pueblo County for five years after the termination of the partnership between him and Sutton. No consideration for that agreement was paid to or received by Pickett in 1960, $10,000 of the $15,000 agreed value of Pickett's interest in *140 the partnership had been paid by Sutton to Pickett prior to the preparation of the October 3, 1960, document. The $15,000 was paid in 1960 by Sutton to Pickett for Pickett's interest in the partnership. Sutton deducted on his return for 1960 a portion of the $15,000 as amortization. Pickett reported a long-term capital gain on his 1960 return representing his profit from the amount received from Sutton for his share of the partnership business. The Commissioner in determining the deficiency held that the $15,000 was ordinary income from an agreement not to compete. All stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner contends that the document dated October 3, 1960, supersedes the partnership agreement of July 1, 1955, states the whole agreement and that the entire $15,000 is taxable to Pickett as ordinary income since it was paid to him solely for agreeing not to compete for five years after the termination of the partnership. This would mean that Pickett received nothing for his interest in the partnership and that Sutton did not rely upon the July 1, 1955, partnership agreement. The evidence shows that Sutton was strictly *141 relying upon the partnership agreement of July 1, 1955, which gave him the right to buy Pickett's interest in the partnership business and required Pickett to cease practicing optometry in Pueblo County for five years following the termination of the partnership. That agreement set the 1959 value of Pickett's interest in the business at $15,000 and both partners had notified Ardell, as trustee, in a letter dated December 31, 1959, that they then value Pickett's interest in the partnership at $15,000. Sutton purchased Pickett's interest in the partnership in 1960 and paid Pickett $15,000 in 1960 for that interest. This terminated their partnership. Sutton had previously on July 1, 1955, obtained Pickett's agreement not to practice optometry in Pueblo County for five years after a termination of the partnership. Sutton knew he did not need to and he did not negotiate or pay for that restriction in 1960. He did not agree to pay nor did he pay anything for it in 1960. He had paid two-thirds of the agreed value of Pickett's interest in the partnership before Ardell produced the October 3, 1960, document. Kettlekamp noted the misstatement in Article 1 of the October 3, 1960, document, did *142 not realize that it might have tax consequences, and advised Pickett to sign it. The petitioners argue that Ardell knew his client would benefit tax-wise if it appeared that the $15,000 was paid for Pickett's agreement not to compete and phrased the document accordingly, whereas Kettlekamp was not familiar with or thinking of the Internal Revenue Code when he advised Pickett to sign the October 3, 1960, document. We need express no opinion on this argument. It is clear that the statement in the document is erroneous and is contrary to the real agreements and acts of Sutton and Pickett. All of the payments made by Sutton to Pickett in 1960 were in accordance with express terms of the July 1, 1955, partnership agreement. The payment of $15,000 was for Pickett's interest in the partnership which he had helped to build up and increase in value. The resulting profit was long-term capital gain. Cf. , affd. ; . Decision will be entered under Rule 50.